UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW NICHOLS,

    Plaintiff,                                    Case No. 18-14041

vs.                                                      HON. MARK A. GOLDSMITH

WILLIAM DWYER, et al.,

    Defendants.
_____/

## OPINION & ORDER
## GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Dkt. 53) AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 61)

This matter is before the Court on Defendants William Dwyer, City of Warren (the "City"), and James R. Fouts's motion to dismiss (Dkt. 53), and on Plaintiff Matthew Nichols's motion for partial summary judgment requesting that the Court compel arbitration of the present dispute (Dkt. 61).[1] Because oral argument will not assist in the decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). This action arises from the termination of Nichols's employment from the City of Warren Police Department ("WPD"). Nichols alleges that he was deprived of due process and contractual rights afforded under his employment contract and a collective bargaining agreement. For the reasons discussed below, the Court finds that Nichols is not entitled to compel arbitration of this dispute, and that Defendants are entitled to dismissal of Nichols's federal claims with prejudice. Because dismissal

---

[1] The motion to dismiss has been fully briefed. Defendants filed a response to Nichols's motion for partial summary judgment (Dkt. 64); however, Nichols did not file a reply brief in support of his motion.

of these federal claims means that this case no longer retains a federal character, the Court dismisses Nichols's state-law claims without prejudice and denies those portions of Defendants' motion challenging the state-law claims without prejudice. The Court retains jurisdiction over the case to evaluate Defendants' motion for sanctions (Dkt. 57); however, all other pending motions are dismissed as moot (Dkts. 65, 73, and 74).

## I. BACKGROUND

Nichols began his employment with the WPD on August 30, 1999. Am. Compl. ¶ 7 (Dkt. 50). On April 10, 2017, Nichols was appointed Warren Deputy Police Commissioner by Defendant Fouts (Mayor of Warren), pursuant to the terms of an employment agreement (the "Agreement"). Id. ¶ 8.

On July 18, 2018, Nichols responded to a dispatch regarding a suspected shoplifting and took an active role in arresting the suspects, one of whom later alleged that Nichols used excessive force in effectuating the arrest. Id. ¶ 10; Charges & Specifications at 2, Ex. 4 to Am. Compl. (Dkt. 50-4). The WPD opened an internal investigation regarding Nichols's alleged use of excessive force and interviewed Nichols twice in connection with that investigation. Am. Compl. ¶¶ 11-14. Upon completion of the internal investigation on August 27, 2018, Defendant Dwyer (Commissioner of the WPD) placed Nichols on unpaid administrative leave and referred the file to the Macomb County Sheriff's Department to investigate potential criminal charges. Id. ¶¶ 15, 38. The Macomb County Prosecutor's Office ultimately declined to pursue criminal charges against Nichols. Id. ¶ 17.

On May 30, 2019, Nichols was served with a notice of the charges and specifications lodged against him by the WPD. See generally Charges & Specifications. This notice also stated that Nichols and his attorney would have the opportunity to respond to these charges during a

hearing, and that no disciplinary decision would be reached until the conclusion of the hearing. Id. at 1. The hearing took place on June 11, 2019. Am. Compl. ¶ 20. Nichols, represented by counsel, submitted exhibits and a written statement during the hearing, and later submitted supplemental documents. Termination Notice, Ex. 4 to Am. Compl. (Dkt. 50-4). On June 14, 2019, Dwyer issued a letter terminating Nichols's employment.

Nichols initiated the present section 1983 action alleging (1) deprivation of his Fifth and Fourteenth Amendment rights to due process, (2) denial of his Fifth and Fourteenth Amendment rights to equal protection, and (3) municipal liability, as well as state-law claims for (4) abuse of process, (5) intentional infliction of emotional distress, (6) breach of contract, and (7) tortious interference with a business relationship. See Am. Compl. Nichols, however, has voluntarily dismissed his equal protection claim. Pl. Resp. to Mot. to Dismiss at 8, 17 (Dkt. 55). Underlying many of Nichols's claims is the allegation that he was deprived of certain rights guaranteed under the Agreement and a collective bargaining agreement ("CBA"), including the right to arbitrate whether his employment was properly terminated. Defendants filed a motion seeking to dismiss each of these claims (Dkt. 53). Subsequently, Nichols filed a motion for partial summary judgment seeking a ruling by the Court that he is entitled to arbitrate the present employment dispute (Dkt. 61).

## II. STANDARDS OF REVIEW

### A. Motion to Dismiss

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "[t]he defendant has the burden of showing that the plaintiff has failed to state a claim for relief." Directv, Inc. v. Treesh, 487 F.3d 471, 476 (6th Cir. 2007) (citing Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991)), cert. denied, 552 U.S. 1311 (2008). To survive a Rule 12(b)(6) motion, the plaintiff

must allege sufficient facts to state a claim to relief above the speculative level, such that it is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plausibility standard requires courts to accept the alleged facts as true, even when their truth is doubtful, and to make all reasonable inferences in favor of the plaintiff. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Twombly, 550 U.S. at 555-556.

Evaluating a complaint's plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Although a complaint that offers no more than "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" will not suffice, id. at 678, it need not contain "detailed factual allegations," Twombly, 550 U.S. at 555; see also Erickson v. Pardus, 551 U.S. 89, 93 (2007) ("[S]pecific facts are not necessary . . . ."). Rather, a complaint needs only enough facts to suggest that discovery may reveal evidence of illegality, even if the likelihood of finding such evidence is remote. Twombly, 550 U.S. at 556. Thus, a motion to dismiss "should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Directv, 487 F.3d at 476.

"In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." Amini v. Oberlin College, 259 F.3d 493, 502 (6th Cir. 2001) (quoting Nieman v. NLO, Inc., 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted). Further, "[D]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Weiner v. Klais and Co., Inc., 108 F.3d 86, 89 (6th Cir.

4

1997) (quoting Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993)). "Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not 'rebut, challenge, or contradict anything in the plaintiff's complaint.'" Erve v. Henry Ford Cmty. College, No. 13-12608, 2014 WL 4705309, at *2 (E.D. Mich. Sept. 22, 2014) (quoting Song v. City of Elyria, 985 F.2d 840, 842 (6th Cir. 1993)).

### B. Motion for Summary Judgment

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)

Once the movant satisfies its initial burden of demonstrating the absence of any genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact. Scott, 550 U.S. at 380; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," Scott, 550 U.S. at 380 (quoting Matsushita, 475 U.S. at 586), as the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," id. (quoting Anderson, 477 U.S. at 247-248)

5

(emphasis in original); see also Babcock & Wilcox Co. v. Cormetech, Inc., 848 F.3d 754, 758 (6th Cir. 2017) ("A mere scintilla of evidence or some metaphysical doubt as to a material fact is insufficient to forestall summary judgment.").

### III. DISCUSSION

#### A. Arbitrability

In his motion for partial summary judgment, Nichols argues that he is entitled to arbitrate the employment dispute under the terms of the Agreement and the CBA. Defendants disagree. As a threshold matter, the Court must determine whether the question of arbitrability—whether the parties are compelled to arbitrate a particular grievance—is properly decided by the Court or by an arbitrator.

It is well-settled that "the question of arbitrability . . . is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." AT&T Techs., Inc. v. Communications Workers, 475 U.S. 643, 649 (1986). Thus, there is a presumption in favor of judicial determination of arbitrability in the absence of clear evidence to the contrary. Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC, 485 F. App'x 821, 823 (6th Cir. 2012). In deciding whether the parties agreed that the question of arbitrability would be reserved for the arbitrator, courts are to apply ordinary principles of contract law, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995), and must "interpret 'silence or ambiguity' on the matter in favor of a judicial determination of the question of arbitrability," Crossville, 485 F. App'x at 823.

Nichols contends that he is entitled to compel post-termination arbitration proceedings under Article 29 of the CBA. However, he fails to identify any express agreement between the parties that an arbitrator should decide the threshold issue of arbitrability. Assuming that the CBA

6

applies in this case, Article 29 incorporates no clear provision requiring that the question of arbitrability be determined by an arbitrator. See CBA, Ex. 7 to Pl. Resp. to Mot. to Dismiss (Dkt. 55-8). The CBA contains a provision stating that "[i]n the event a case is appealed to the arbitrator and he finds that he has no power to rule on such case, the matter shall be referred back to the parties without decision or recommendation on the merits of the case." Id. But this provision does not "clearly and unmistakably" reserve the determination of arbitrability to the arbitrator. Further, the CBA does not incorporate by reference the rules of the American Arbitration Association, id., which provide that arbitrators have the power to resolve arbitrability questions, see Henry Schein, Inc. v. Archer & White Sales, Inc., -- U.S. --, 139 S. Ct. 524, 528 (2019). Consequently, whether Nichols is entitled to participate in a post-termination arbitration is an issue that must be determined by the Court.

The Federal Arbitration Act requires a federal court to compel arbitration when a party to an arbitration agreement fails or refuses to comply with the provisions of an enforceable arbitration agreement. 9 U.S.C. § 4. Several fundamental principles apply in determining whether a matter is subject to arbitration. First, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" AT&T Techs., 475 U.S. at 648 (quoting Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)). Second, in determining whether parties agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Id. at 649. Finally, when a contract contains an arbitration clause, "there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" Id. at 650 (quoting Warrior & Gulf, 363 U.S. at 582-583).

7

Nichols asserts that his right to arbitrate the present employment dispute arises from the terms of the Agreement and the CBA. Specifically, Nichols maintains that in the event his employment was terminated, the Agreement entitles him to the rights afforded under the CBA for the purpose of determining whether he was properly terminated from the WPD. Agreement ¶ 5, Ex. 1 to Am. Compl. (Dkt. 50-1). Likewise, the CBA provides that a deputy commissioner removed voluntarily or involuntarily from his position is afforded the right to return to the bargaining unit. CBA, Article 36(C).

The CBA, in turn, sets forth a four-step grievance procedure permitting employees in the bargaining unit to raise disputes, claims, or complaints arising under the CBA. Id. at Article 29(A). At Step I, the employee discusses his complaint with his immediate supervisor and his unit representative. Id. at Article 29(F). If the matter is not resolved, Step II authorizes the employee's unit representative to submit a written grievance to the commissioner. Id. At Step III, an unresolved grievance is referred to the labor relations director. Id. Finally, an unresolved grievance may be pursued at arbitration at Step IV. Id. An individual employee, however, is not entitled to compel arbitration, as "[t]he right to proceed to arbitration shall exclusively be held by the Union and the City only." Id. at Article 29(F)(1).

Assuming that Nichols was entitled under the Agreement to return to the bargaining unit following termination of his employment, he was not entitled to compel arbitration under the clear terms of the CBA. The CBA provides that the right to pursue arbitration of Nichols's grievance rested exclusively with the union and the employer. Nichols, therefore, has no individual right under the CBA to demand arbitration. See Safran v. United Steel Workers of Am., AFL-CIO, 678 F. Supp. 1178, 1181 (W.D. Penn. 1988) (holding that where plaintiff employees appointed the defendant union as their representative, "no plaintiff alone has the right to bypass the procedures

set forth in the agreement and compel defendant USX to proceed to arbitration with their individual grievance"); see also Vaca v. Sipes, 386 U.S. 171, 191 (1967) (rejecting the notion that an individual employee has an absolute right to have his grievance taken to arbitration where the grievance procedure gives the union discretion to invoke arbitration). Consequently, the CBA does not mandate arbitration of the present dispute, and Nichols's motion for partial summary judgment must be denied.

Because Nichols is not entitled to compel arbitration of the present matter, the Court must address the legal viability of the claims asserted in his amended complaint.

**B. Due Process Claim**

In Count I of the amended complaint, Nichols asserts that he was deprived of his property interests without due process of law in violation of the Fifth and Fourteenth Amendments.[2] Specifically, Nichols alleges that he was deprived of his procedural due process right to a post-termination arbitration, and to his contractual property rights to return to his previous position as a lieutenant and to have his misconduct evaluated under a just-cause standard.

Although Nichols makes cursory reference in his amended complaint to a substantive due process right to pre-termination and post-termination hearings, Am. Compl. ¶ 35, he fails to address or defend such a claim in his response to Defendants' motion to dismiss, see Pl. Resp. to Mot. to Dismiss (Dkt. 55). Thus, any substantive due process claim is deemed waived. See McPherson v. Kelsey, 125 F.3d 989, 995-996 (6th Cir. 1997) ("Issues adverted to in a perfunctory

---

[2] The Fifth Amendment cannot support a claim against state actors. See Scott v. Clay Cty., Tenn., 205 F.3d 867, 873 n.8 (6th Cir. 2000) ("The Fourteenth Amendment's Due Process Clause restricts the activities of the states and their instrumentalities; whereas the Fifth Amendment's Due Process Clause circumscribes only the actions of the federal government."). Therefore, Nichols's reliance on the Fifth Amendment is a nullity, and dismissal of this claim is proper. See id.

9

manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." (citation and marks omitted)).

To prevail on a procedural due process claim asserted under 42 U.S.C. § 1983, a plaintiff must prove that "(1) the defendant was a person acting under the color of state law, and (2) the defendant deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States." Fridley v. Horrighs, 291 F.3d 867, 871-872 (6th Cir. 2002). Here, it is undisputed that Dwyer and Fouts were acting under the color of state law. However, Defendants contend that Nichols was not deprived of his constitutional right to due process.

The due process clause of the Fourteenth Amendment guarantees that "certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985). In the context of employment rights, public employees with constitutionally protectable property interests in their employment are entitled to a pre-termination hearing, including "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. at 542, 546. A pre-termination hearing need not be elaborate so long as the employee is entitled to a full post-termination hearing with the possibility of judicial review. Brickner v. Voinovich, 977 F.2d 235, 237 (6th Cir. 1992).

Nichols contends that he had a constitutionally protectible property interest to invoke post-termination arbitration under the grievance procedures set forth in the CBA. Am. Compl. ¶ 27. The law is well-established that "'grievance procedures provided by a collective bargaining agreement can satisfy a plaintiff's entitlement to post-deprivation due process.'" Farhat v. Jopke, 370 F.3d 580, 596 (6th Cir. 2004) (quoting Hennigh v. City of Shawnee, 155 F.3d 1249, 1256

(10th Cir. 1998)). Indeed, "it is the <u>opportunity</u> for a post-deprivation hearing before a neutral decisionmaker that is required for due process," provided the procedural requirements are reasonable and afford the employee notice and a meaningful opportunity to be heard. <u>Id.</u> (emphasis in original). The Sixth Circuit has specifically held that the mere availability of post-termination arbitration is sufficient to satisfy due process, even if the employee's union elects at its discretion not to pursue a grievance at arbitration. <u>Rhoads v. Bd. of Educ.</u>, 103 F. App'x 888, 897 (6th Cir. 2004).

As described above, the CBA sets forth a four-step grievance procedure permitting employees in the bargaining unit to raise disputes, claims, or complaints arising under the CBA. CBA, Article 29(A). An employee is permitted to initiate the grievance procedures at Step I, which requires that he discuss his grievance with his immediate supervisor and unit representative. <u>Id.</u> at Article 29(F). Arbitration, however, is governed by Step IV, which provides that "[t]he right to proceed to arbitration shall exclusively be held by the Union and the City only." <u>Id.</u> Accordingly, only the union and the City—and not an individual employee—are entitled to invoke the arbitration provision.

While Nichols is correct in asserting that the CBA contains an arbitration provision, his due process arguments in regard to that provision falter for two distinct reasons.

First, Nichols cannot sustain a procedural due process claim, because he failed to adhere to the grievance procedures set forth in the CBA. "[W]here the employee refuses to participate or chooses not to participate in the post-termination proceedings, then the employee has waived his procedural due process claim." <u>Farhat</u>, 370 F.3d at 597. Nichols does not allege that he lodged a grievance with his immediate supervisor and unit representative, as required under Step I of the process. Rather, he immediately sought to file a request with the Federal Mediation and

Conciliation Service to compel arbitration. Am. Compl. ¶ 32. Consequently, though Nichols alleges that he was entitled to post-termination remedies under the CBA, he failed to avail himself of the proper procedures required to initiate a grievance. Nichols does not contend these grievance procedures are unreasonable or procedurally deficient, nor does he offer any explanation for his failure to follow them. Thus, Nichols fails to assert a viable procedural due process claim.

Second, Nichols fails to state a procedural due process claim, because he had no individual right to compel arbitration under Step IV. As explained above, discretion to pursue arbitration on Nichols's behalf rested exclusively with the union. Given Nichols's failure to invoke the proper grievance procedures, the union did not decline to pursue arbitration of his termination. But even if the union had done so, a due process claim alleging failure to pursue arbitration is not properly asserted against Defendants. See Rhoads, 103 F. App'x at 897 ("The fact that the Union elected not to pursue arbitration on [the employee]'s behalf does not amount to a deprivation of her right to due process by [the employer]."); see also Hennigh; 155 F.3d at 1256 (finding no violation of due process by a public employer where the employee's union declined to pursue his grievance at arbitration under a CBA). Nichols, therefore, fails to state a cognizable procedural due process claim.

Nichols also alleges that he was deprived, without due process of law, of his contractual property rights to return to his previous position as a lieutenant and to have his misconduct evaluated under a just-cause standard. In recognition of the principle that "the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts," courts have been hesitant to expand the scope of interests that give rise to constitutional protections. S & D Maint. Co., Inc. v. Goldin, 844 F.2d 962, 966 (2d Cir. 1988). In the context of public contracts, courts have held that an interest in the enforcement of an ordinary commercial

12

contract with a state does not constitute a constitutionally protected property interest. Id. Procedural protections, therefore, apply only to those rights that are well-established as property interests under the law—such as the right to permanent public employment absent good cause for discharge. Id. at 966-967.

With respect to Nichols's claims asserting deprivation of his contractual rights to return to his previous position as a lieutenant and to just-cause evaluation of his misconduct, these contractual interests do not give rise to due process claims. Id. The Court has already evaluated Nichols's procedural due process claim with respect to the termination of his employment. A grievance procedure was available to Nichols to evaluate his right to continued employment with the WPD. Any just-cause evaluation of Nichols's misconduct or a determination regarding his right to return to a lieutenant position would have been performed through the course of this grievance procedure. However, as described above, Nichols failed to invoke these procedures. Nichols's due process claims regarding his contractual property rights, therefore, must be dismissed.

C. **Municipal Liability**

In Count III of his amended complaint, Nichols asserts a claim for municipal liability against the City under Monell v. Dep't of Soc. Servs. of New York, 436 U.S. 658 (1978). To succeed on a municipal liability claim under Monell, a plaintiff must establish that his constitutional rights were violated and that a policy or custom of the municipality was the "moving force" leading to the violation. Miller v. Sanilac Cty., 606 F.3d 240, 254-255 (6th Cir. 2010). An unconstitutional policy or custom may include "(1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal

13

rights violations." Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005). However, "[t]here can be no liability under Monell without an underlying constitutional violation." Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014).

Nichols premises this claim on the allegedly "intentional, reckless and/or deliberately indifferent" actions of Dwyer—an official alleged to have final decision-making authority for the WPD—that represented the policy, practice, and custom of the City. Am. Compl. ¶¶ 50-52. However, Nichols fails to plead what specific acts underlie his claim, let alone plausibly allege that these acts amounted to a policy, practice, or custom. Similarly, Nichols contends in his briefing that Fouts had final decision-making authority for the City, Pl. Resp. to Mot. to Dismiss at 12-13; however, no allegations are made in the briefing or amended complaint describing how any of Fouts's alleged acts or omissions deprived Nichols of his constitutional rights. The Court concluded above that Nichols failed to state a claim that he was deprived of due process, and Nichols has voluntarily withdrawn his equal protection claim. No other constitutional violations are alleged in the amended complaint. Therefore, because Nichols fails to allege a constitutional violation, dismissal of his municipal liability claims is appropriate.

### D. State-Law Claims

As stated above, Nichols also brings state-law claims for abuse of process, intentional infliction of emotional distress, breach of contract, and tortious interference with a business relationship. Having determined that Nichols's federal claims lack merit, the case does not retain a federal character. Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to extend supplemental jurisdiction over Nichols's state-law claims and dismisses them without prejudice. Brown v. Cuyahoga Cty., 517 F. App'x 431, 436 (6th Cir. 2013) ("[Twenty-eight] U.S.C. § 1367

allows a district judge to decline to exercise supplemental jurisdiction over state-law claims if the district court has dismissed all claims over which it has original jurisdiction." (ellipsis omitted)).

## IV. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss (Dkt. 53) is granted in part and denied in part, and Nichols's motion for partial summary judgment (Dkt. 61) is denied. Nichols's federal claims (Counts I, II, and III) are dismissed with prejudice, and his state-law claims (Counts IV through VII) are dismissed without prejudice. The Court retains jurisdiction over the case to evaluate Defendants' motion for sanctions (Dkt. 57); however, all other pending motions are dismissed as moot (Dkts. 65, 73, and 74).

SO ORDERED.

Dated: February 19, 2020            s/Mark A. Goldsmith
       Detroit, Michigan            MARK A. GOLDSMITH
                                    United States District Judge