UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW NICHOLS,

        Plaintiff,

vs.

WILLIAM DWYER, et al.,

        Defendants.

_____/

Case No. 18-14041

HON. MARK A. GOLDSMITH

**ORDER & OPINION**
**(1) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 125), (2) DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 126), (3) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT (Dkt. 111), (4) GRANTING PLAINTIFF'S MOTION TO AMEND MOTION TO AMEND COMPLAINT (Dkt. 114), (5) DENYING AS MOOT PLAINTIFF'S MOTION FOR JUDICIAL NOTICE (Dkt. 134), AND (6) DENYING PLAINTIFF'S MOTION FOR SANCTIONS (Dkt. 138)**

This case is on remand after the United States Court of Appeals for the Sixth Circuit reversed in part this Court's grant of a motion to dismiss Plaintiff Matthew Nichols's claims, reviving only his procedural due process causes of action. Before the Court are motions for summary judgment filed by Nichols (Dkt. 126) and by Defendants City of Warren, Police Commissioner William Dwyer, and Mayor James Fouts (Dkt. 125). Nichols also filed several other motions: to take judicial notice of a hearing transcript in a different case (Dkt. 134), to amend his complaint (Dkt. 111), to amend that motion to amend his complaint (Dkt. 114), and to award Nichols sanctions for Defendants' alleged destruction of evidence (Dkt. 138). For the reasons that follow, the Court grants Defendants' motion for summary judgment, denies Nichols's motion for summary judgment, denies as moot Nichols's motion for judicial notice,

grants Nichols's motion to amend his motion to amend his complaint, denies Nichols's motion to amend that complaint, and denies his motion for sanctions.[1]

## I. BACKGROUND

The material facts are undisputed. In 2017, Nichols—previously employed as a lieutenant with the Warren Police Department—was appointed Deputy Police Commissioner pursuant to an employment agreement. See Emp. Ag. (Dkt. 50-1). That agreement states that the Deputy Commissioner "shall serve at the pleasure of the Mayor" and "may be terminated at any time and for any reason with or without cause, and without prior notice." Id. at PageID.1469. If terminated "for any reason or no reason at all," Nichols would "have the right to return, if he so cho[se], to his former position" as lieutenant. Id. And if terminated or suspended "under circumstances that could cause his removal from the department or inability to return as a lieutenant," Nichols would "be afforded the rights provided in the WPCOA collective bargaining agreement for the purpose of determining whether the Deputy Commissioner has been properly removed from the Warren Police Department or barred from returning to the position of lieutenant only." Id. at PageID.1469–1470.

The employment agreement here refers to the collective bargaining agreement (CBA) executed between Warren and the Warren Police Command Officers Association (WPCOA), the union for Warren police officers. That CBA provides a process by which a covered Warren Police Department employee may coordinate with the WPCOA to file a "grievance." See CBA at PageID.1643–1644 (Dkt. 55-8). This four-step procedure culminates in the right of the

---

[1] The Court held a hearing on the parties' motions for summary judgment on July 27, 2022. See 7/27/22 Hr'g Tr. (Dkt. 140). In addition to the motions, the briefing includes Nichols's response to Defendants' motion for summary judgment (Dkt. 129), Defendants' reply (Dkt. 132), Defendants' response to Nichols's motion for summary judgment (Dkt. 130), Nichols's reply (Dkt. 133), Defendants' response to Nichols's motion to amend his complaint (Dkt. 115), Nichols's reply (Dkt. 118), Defendants' response to Nichols's motion for sanctions (Dkt. 143), and Nichols's reply (Dkt. 144).

WPCOA and the City to proceed to arbitration if they cannot resolve the grievance at an earlier stage. Id.

Nichols's employment agreement further clarifies the limits of the relief he may seek through the grievance process, if he is terminated from his Deputy Commissioner position, stating: "No arbitrator or other body has jurisdiction to reinstate the employee to the position of Deputy Commissioner, but would only be able to return him to his former rank of lieutenant." Emp. Ag. at PageID.1470.

On July 18, 2018, Nichols used force to effect the arrest of civilian Karl Hermansen, who Nichols suspected had been involved in shoplifting. See Def. Br. in Supp. Mot. Summ. J. at 2–4; Am. Compl. ¶ 10. The Warren Police Department and attorneys with the City of Warren investigated this incident. They called Nichols to attend meetings at Warren City Hall on July 25 and August 7, 2022, at which they gave Nichols a Garrity warning[2] and informed him that he was being investigated for the alleged use of excessive force. See Def. Br. in Supp. Mot. Summ. J. at 2–4; Am. Compl. ¶¶ 11–14; 7/25/18 Interview Tr. (Dkt. 32-7); 8/7/18 Interview Tr. (Dkt. 32-8). Nichols was subsequently placed on paid administrative leave, see 7/26/18 Personnel Order (Dkt. 32-4), and then on unpaid administrative leave, see 8/27/18 Personnel Order (Dkt. 32-5). Later in the investigation, Dwyer charged Nichols with use of excessive force, failure to report use of force, falsehoods stated at Garrity hearing, and creation of a hostile work environment. See 5/30/19 Hr'g Notice & Mem. (Dkt. 34-16). Nichols and his counsel attended

---

[2] A Garrity warning is an advisement of rights administered to employees who may be subject to an internal investigation that may implicate them in a crime. See Garrity v. State of N.J., 385 U.S. 493, 497–498 (1967) (finding that confessions elicited from police officers under investigation—forced "either to forfeit their jobs or to incriminate themselves"—were not voluntary, and so the Fourteenth Amendment prohibited the use of those statements in subsequent criminal prosecution).

3

a <u>Loudermill</u> hearing[3] on these charges, <u>see</u> 6/11/19 Hr'g Tr. (Dkt. 61-5), after which Dwyer sustained the charges and informed Nichols that his "employment [was] terminated effective immediately," 5/30/19 Hr'g Notice & 6/14/19 Termination Letter (Dkt. 50-4).

Following Nichols's termination, Nichols's attorney Jamil Akhtar requested information from the City's attorneys regarding how to initiate the CBA grievance procedure and invoke arbitration. <u>See</u> 6/15/19 Email at 1 (Dkt. 55-2); 6/24/2019 Email at 2 (Dkt. 50-3). City attorney Raechel Badalamenti responded that she had "no information" to assist Nichols in reaching arbitration and that Nichols had "no contract[ual] right to it." 6/24/2019 Email at 1.

Nichols brought suit in this Court alleging violations of his procedural due process rights, substantive due process rights, and state-law rights deriving from the CBA and his employment agreement. <u>See</u> Am. Compl. (Dkt. 50). This Court granted Defendants' motion to dismiss on Nichols's due process claims, denied Nichols's motion for partial summary judgment to compel arbitration, and declined to exercise supplemental jurisdiction over his state-law claims. <u>See</u> 2/19/20 Op. & Order (Dkt. 76). On appeal, the Sixth Circuit affirmed this Court's denial of Nichols's motion to compel arbitration, affirmed the dismissal of Nichols's substantive due process claims, and affirmed the dismissal of Nichols's procedural due process claims as to Fouts. <u>See</u> <u>Nichols v. Dwyer</u>, 856 F. App'x 589, 601 (6th Cir. 2021).

The Sixth Circuit, however, found that Nichols had stated a plausible procedural due process claim against Dwyer and Warren. <u>Id.</u> To survive on this claim, Nichols was required to "allege [(i)] that he had a property interest protected by the Due Process Clause, and [(ii)] that he

---

[3] A <u>Loudermill</u> hearing is designed to satisfy the requirement for "some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1985) (punctuation modified, citations omitted).

4

was deprived of it without the process required by law." Id. at 596 (citing Daily Servs., LLC v. Valentino, 756 F.3d 893, 904 (6th Cir. 2014)).

The Sixth Circuit made clear that Nichols had no procedural due process claim based on his termination from his Deputy Commissioner position. Id. Because Nichols's "Employment Agreement provided that Nichols could be dismissed from his appointed position as Deputy Commissioner without cause," Nichols "had no property right in that appointment." Id.

However, because the employment agreement stated that Nichols "had the right to return to his former position" of lieutenant in the event that he was "removed from his appointed position" of Deputy Commissioner, Nichols had properly alleged that he had "a constitutionally protectable property interest in his continuing employment as a Lieutenant in the bargaining unit of the Warren Police Department." Id. at 596–597 (citing Emp. Ag. at PageID.1469). Nichols had also sufficiently alleged that he was deprived of this property interest without the process required by law because "Defendants were obligated to return Nichols to his prior post in the bargaining unit, making him eligible to initiate the grievance procedure"; but, instead of doing so, Defendants "rejected Nichols'[s] request for instructions on how to pursue his rights under the CBA" and thus "rendered the grievance procedures of the CBA unavailable to Nichols." Id. at 599 (citing Rodgers v. 36th Dist. Court, 529 F. App'x 642, 649 (6th Cir. 2013)). Therefore, Nichols's procedural due process claim based on his exclusion from his lieutenancy position survived Defendants' motion to dismiss. Id.

The Sixth Circuit remanded Nichols's case to this Court for further proceedings. Id. at 601. After conferring with the parties and confirming their position that no further discovery was necessary and that Nichols's remaining claims were ripe for review on summary judgment,

5

the Court directed the parties to file the motions for summary judgment now before it, see 2/4/22 Order at 2–3 (Dkt. 120), and it held a hearing on those motions, see 7/27/22 Hr'g Tr.

## II.  ANALYSIS

The Court first considers the parties' arguments on summary judgment, and it then turns to the remaining motions filed by Nichols.

### A. Motions for Summary Judgment on Procedural Due Process

Nichols's only remaining claims on remand are his procedural due process claims against Dwyer and Warren for their having allegedly deprived him of his protected interest in his former lieutenancy position without due process of law.  See Nichols, 856 F. App'x at 596–601. Nichols has no protected property interest in his former Deputy Commissioner position, see id. at 596, and thus no procedural due process claim on the basis of his termination from that position, see Daily Servs., 756 F.3d at 904.

Nonetheless, Nichols insists that the sole relief he seeks from this Court is a return to the Deputy Commissioner position.  Akhtar represented Nichols during the hearing.  The Court asked Akhtar: "Is it your view that all you're asking for in this case is that [Nichols] be reinstated into [the] deputy commissioner's position?  You are not asking that he be returned to his lieutenant's position; is that right?" 7/27/22 Hr'g Tr. at 8.  Akhtar stated: "That's correct.  It's a condition precedent[,] your Honor[,] for him going back down to the lieutenant's position that the mayor take affirmative action to remove him." Id.  The Court asked: "so your case here is restricted to whatever remedies or rights you'd have by virtue of his being removed from his deputy commissioner position; is that right?" Id. at 8–9.  Akhtar responded: "that is my position[,] and it is the position of the Sixth Circuit." Id. at 9.  Seeking to confirm counsel's theory for the limited relief he was seeking in this action, the Court asked: "you're saying [that]

6

what we would decide in this lawsuit is whether or not Mr. Nichols needs to be reinstated to his deputy commissioner's position[,] and then it would be up to the mayor to decide whether he wants to terminate Mr. Nichols or not[,] and if he decides not to terminate Mr. Nichols, there's nothing left for Mr. Nichols to pursue, right? He'd be in his deputy commissioner's position, right?" Id. at 21. Akhtar stated: "Right." Id. The Court continued: "So all you're asking this Court [to] do is to determine whether or not he should be reinstated to [the] deputy commissioner's position, correct?" Akhtar responded: "Correct . . . ." Id. The Court asked if Akhtar wanted to say anything further, and Akhtar declined. Id.

The Court may properly rely on Nichols's counsel's representations in open court when ruling on the parties' motions for summary judgment.[4] Additionally, Nichols's briefing reaffirms Akhtar's averment that the only remedy sought by Nichols derives from his asserted right to be returned to the Deputy Commissioner position. See Def. Mot. for Summ. J. at 15 ("The requested action of the Plaintiff is, for the Court to order plaintiff to be returned to his Deputy Commissioner position, at which time the Mayor will decide to keep Plaintiff as the Deputy Commissioner, or have Plaintiff returned to his position in the Warren Police Department."); id. at 20 (concluding: "For all the reasons stated above, Plaintiff is requesting that this Honorable Court return him to his former position as Deputy Commissioner, which in turn

---

[4] See, e.g., Donald v. Cieszkowski, No. 17-cv-12190, 2019 WL 2866493, at *6 n.4 (E.D. Mich. July 2, 2019) (denying motions for summary judgment where movants' counsel "candidly acknowledged" at hearing during "colloquy" with court that their asserted defense was inapplicable if court construed testimony as it did); Yamasaki Korea Architects, Inc. v. Yamasaki Assocs., Inc., No. 08-10342, 2009 WL 1883897, at *9 (E.D. Mich. June 30, 2009) (granting summary judgment to counter-defendant on counter-claim for breach of license agreement based in part on "statements by Counsel made on the record at the hearing" including concession that "there was no licensing agreement between the parties") (emphasis modified); see also Isabel v. Velsicol Chem. Corp., No. 04-2297 DV, 2006 WL 1745053, at *11 n.3 (W.D. Tenn. June 20, 2006) (electing, where certain factual information submitted to court was inconsistent, to "rely on the data [used in defendant's oral argument] and "defense counsel's representations to the court during the hearing").

would allow the Mayor to take the appropriate action . . . to either reinstate Plaintiff to the Deputy Commissioner [sic] [.]").

Nichols has no procedural due process claim for the only relief he requests from this Court. His counsel agreed that Nichols's case is "restricted to whatever remedies or rights [he would] have by virtue of his being removed from his deputy commissioner position." 7/27/22 Hr'g Tr. at 8–9. But Nichols "had no property right" in the Deputy Commissioner position. Nichols, 856 F. App'x 589 at 596. Nichols appears to suggest otherwise based on his understanding that "the Sixth Circuit found, albeit not artfully, that only the Mayor has the power to remove the Deputy Commissioner." Def. Mot. for Summ. J. at 13 (citing Nichols, 856 F. App'x 589 at 597). In fact, the Sixth Circuit stated that Nichols's employment agreement "indicates, albeit not artfully, that only the Mayor has the power to terminate or suspend the Deputy Commissioner at all"—on which basis the Sixth Circuit found that "[a] reasonable employee executing this Employment Agreement would therefore believe that only the Mayor could terminate or suspend him for disciplinary reasons, and that he would always be entitled to the rights provided by the CBA if his position as Lieutenant were threatened." Nichols, 856 F. App'x 589 at 597 (emphasis added). Thus, Nichols's only "constitutionally protectable property interest" was "in his continuing employment as a Lieutenant." Id.

Nichols has no constitutionally protected property right in the Deputy Commissioner position, id. at 596, and a return to this position is the only relief that he seeks, see 7/27/22 Hr'g Tr. at 7–9, 21; Def. Mot. for Summ. J. at 15, 20. Nichols cannot utilize a theory of procedural due process to win reinstatement to a position in which he has no property right. See Kizer v. Shelby Cnty. Gov't, 649 F.3d 462, 468 (6th Cir. 2011) (affirming grant of summary judgment to defendant employers on procedural due process claim, explaining that terminated plaintiffs

8

"failed to show that they have a constitutionally protected property interest in their employment . . . [a]nd, without a legitimate property interest, the Due Process Clause offers no procedural protections to these former employees"). The Court, therefore, grants Defendants' motion for summary judgment and denies Nichols's motion for summary judgment on Nichols's procedural due process claims against Dwyer and Warren.[5]

### B. Motion to Amend Complaint

In a motion filed on January 4, 2022, Nichols seeks to add a First Amendment claim to his complaint, alleging that Defendants retaliated against him for filing the present lawsuit on December 26, 2018. See Pl. Mot. to Amend; Proposed 2d Am. Compl. ¶ 46 (Dkt. 114-1).[6] Nichols proposes two alleged retaliatory actions: (i) Dwyer "terminated Plaintiff's employment" as Deputy Commissioner on January 15, 2019 by appointing Robert Ahrens to that position, Pl. Mot. to Amend at 1–2; and (ii) sometime in January 2019, "within days[] after Plaintiff filed his lawsuit," Dwyer "contacted the U.S. Attorney's Office/Federal Bureau of Investigation [(FBI)] to conduct an investigation as to Plaintiff's alleged misconduct," id. at 11.

Courts should give plaintiffs leave to amend their pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). Amendment is not proper "'in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility.'" Urb. Grp. Real Est. Invs., LLC v. Ann Arbor Urb.

---

[5] The Court also denies as moot Nichols's motion for the Court to consider a hearing transcript from a case filed by Hermansen in this district, Hermansen v. City of Warren, et al., No. 20-12633, in which he asserted claims against Nichols and Warren deriving from the incident at which he was arrested. While Nichols submits that this transcript sheds light on "the merits of [Defendants'] decision to terminate Plaintiff's employment," Pl. Mot for Judicial Notice at 3, that issue is not of any legal consequence in connection with the Court's ruling on summary judgment.

[6] Defendants do not oppose Nichols's motion to amend his motion to amend his complaint to correct certain typographical errors, and so the Court grants Nichols's motion to amend his motion to amend.

Lifestyle, LLC, No. 16-cv-10038, 2016 WL 9403995, at *1 (E.D. Mich. Nov. 14, 2016) (quoting Duggins v. Steak 'N Shake, Inc., 195 F.3d 828, 834 (6th Cir. 1999)). Courts also consider untimely requests to amend the pleadings under Federal Rule of Civil Procedure 16's "good cause" standard, which is measured by the moving party's diligence and by prejudice to defendants. See Garza v. Lansing Sch. Dist., 972 F.3d 853, 879 (6th Cir. 2020).

For the reasons discussed below, the Court denies Nichols's motion to amend his complaint in consideration of (i) his undue delay and lack of due diligence, (ii) the futility of his proposed First Amendment claim, and (iii) the prejudice that an amendment to the pleadings would cause to Defendants.

**i. Undue Delay and Lack of Due Diligence**

Nichols argues that a retaliation cause of action was "not known to Plaintiff" when he filed his second amended complaint on July 29, 2019. See Pl. Br. in Supp. Mot. to Amend at 14. Apparently, this newly asserted claim was also not known to Nichols in September 2021, when this Court directed the parties to submit a joint memorandum on remaining issues to be resolved following remand, 9/10/21 Order (Dkt. 104), and Nichols gave no indication that he was considering amending his complaint, see 9/24/21 Joint Mem. (Dkt. 107).

However, it is apparent that Nichols could have asserted a retaliation claim at a far earlier stage of the proceedings. Nichols's first retaliation theory is that Dwyer terminated him when Dwyer published what Nichols calls a "written memorandum" or a "departmental notice" on January 15, 2019 to retroactively promote Robert Ahrens to Deputy Commissioner. See Pl. Mot to Amend at 2–3; Proposed 2d Am. Compl. ¶ 46 (citing Seniority in Rank Form (Dkt. 111-6)). The document cited by Nichols compiles various "Personnel Order[s]" and other forms that identify the employment statuses of certain Warren Police Department employees. See Seniority

in Rank Form. It indicates that Ahrens was made "acting" Deputy Commissioner as of September 4, 2018. Id. at 7. Nichols also submits that Ahrens testified during his deposition that Dwyer had directed Ahrens to occupy Nichols's office and remove Nichols's personal property within days of the filing of Nichols's lawsuit. Proposed 2d Am. Compl. ¶ 47.

Nichols fails to explain why he had to wait until January 2022 to allege that Defendants terminated him in retaliation for his having filed his lawsuit. Nichols does not inform the Court when he learned that Ahrens had been promoted to the Deputy Commissioner position, but the Court does not find it credible that Nichols was unaware that his vacant seat had been filled by someone else at the time Nichols filed his amended complaint (July 29, 2019). That was the time to assert a retaliation claim—or at the latest, in September 2021, when the Court and the parties identified open issues in Nichols's case. Nichols had sufficient facts available when filing his amended complaint to allege that Dwyer had removed Nichols's name and title from the Deputy Commissioner office door on or about December 21, 2018. See Am. Compl. ¶ 18. In fact, Nichols originally alleged that that event (which preceded the filing of his lawsuit) constituted his termination. See id. ¶ 40. Thus, the facts needed to allege retaliation based on the January 2019 notice of appointment of his successor were well known to Nichols well before January 2022 when he filed his motion to amend.

Nor is it new information that Dwyer had asked other law enforcement agencies to investigate Nichols's alleged misconduct. Nichols relies on deposition testimony from Lieutenant Daniel Bradley, who stated that he submitted a report on Nichols's misconduct to Dwyer on January 3, 2019 at Dwyer's direction, and that the FBI subsequently contacted Bradley about his investigation. See Pl. Mot. to Amend at 11. But Nichols's amended complaint already alleged the same facts that underlie his new retaliation claim: that "Dwyer requested the United

11

States Department Justice [sic]/[FBI] to open an investigation as to whether Plaintiff was involved in assaulting" Hermansen. Am. Compl. ¶ 19; see also id. ¶ 60 (alleging that Dwyer "contacted the [FBI] and/or the U.S. Attorneys office and requested they open an investigation as to alleged police brutality on the part of Plaintiff"). Further, Defendants submit that they produced Bradley's report to Nichols back in 2019. Def. Resp. to Pl. Mot. to Amend at 10. There is no retaliation claim here that Nichols could not have brought before his present motion to amend.

Nichols "cannot show that [his retaliation] claim . . . was unavailable prior to [Ahrens and Bradley's] deposition[s], and thus has not shown good cause for [his] delay." Garza, 972 F.3d at 879 (affirming denial of motion to amend complaint where plaintiff claimed she had not discovered basis for new claim until deposition, but where earlier-filed complaint and evidence produced to plaintiff indicated that she could have brought more timely claim). The lack of timeliness in moving to amend the pleadings does not always merit denial, and "[h]ad [Nichols] explained [his] tardiness, [he] may have shown that the timing of the motion—by itself—was not sufficient to deny the motion outright." Knight Cap. Partners Corp. v. Henkel AG & Co., KGaA, 930 F.3d 775, 786 (6th Cir. 2019). However, Nichols has not "provide[d] such an explanation." Id. (affirming denial of motion to amend complaint). The Court concludes that Nichols's undue delay weighs in favor of denying his motion.

**ii. Futility**

"An amendment to a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." Kircher v. City of Ypsilanti, 809 F. App'x 284, 297 (6th Cir. 2020) (punctuation modified, citation omitted).

12

To plausibly state a First Amendment retaliation claim against a former employer, a terminated government employee must allege that the speech against which the government retaliated "address[ed] a matter of public concern." Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 386 (2011). For example, in Myers v. City of Centerville, Oh., a police officer's letter to a city manager addressed a matter of public concern where both (i) the letter "complained about [a different employee's] unfair firing" in a manner that "was not made merely for [plaintiff's] personal reasons—i.e., the [plaintiff] did not speak merely to get the job . . ."; and (ii) "more importantly," the letter complained that the firing "was unfair because the City had previously tolerated similar actual or potential wrongdoing . . . ." 41 F.4th 746, 762 (6th Cir. 2022) (punctuation modified, emphasis in original, citations omitted). In contrast, "personnel matters" like "run-of-the-mill employment disputes" do not pose matters of public concern, "particularly when the recommended course of action would benefit the employee." Boulton v. Swanson, 795 F.3d 526, 532 (6th Cir. 2015).

The lawsuit that supposedly prompted Defendants' retaliatory actions alleged that Nichols's termination violated his constitutional and state-law rights, and it demanded that Defendants return Nichols to his prior position. See Compl. at PageID.15–16 (Dkt. 1). This lawsuit did not raise a matter of public concern. Nichols did not allege systematic misconduct or corruption that extended beyond his individual circumstance. The grievances underlying Nichols's suit were "personal reasons" contesting the loss of his own "job." Myers, 41 F.4th at 762.

A police officer does not raise a matter of public concern simply by protesting that he should not have been fired. See Martsolf v. Christie, 552 F. App'x 149, 152 (3d Cir. 2013) (affirming dismissal of sergeant's claim that employer had retaliated against him for filing

federal civil rights lawsuit and related grievances, explaining that sergeant's petitions "related to private employment disputes, rather than petitions filed in an effort to advance a political or social point of view beyond the employment context") (punctuation modified, citation omitted); Woodard v. City of Murfreesboro, No. 3:20-cv-00148, 2020 WL 3546759, at *20–21 (M.D. Tenn. June 30, 2020) (dismissing police officer's First Amendment claim based on supervisor's alleged "misconduct"—i.e., that supervisor had lied about the officer during events that preceded officer's termination—stating: "if every instance of police officer misconduct were a matter of public concern, then every time a police officer is fired for cause he would have the ability to claim that his appeal of that decision constituted a matter of public concern").

Nichols's attempts to explain why his lawsuit addressed a matter of public concern have no merit. He asserts that, one day after service of Nichols's complaint, Dwyer "contacted the Detroit Metropolitan newspapers, television stations, and radio stations, for the purpose of holding a public press conference," Pl. Reply in Supp. Mot. to Amend at 2—and "it was Defendants [sic] Dwyer's public statements during his news conference, which brought this matter before the public," id. at 4. Nichols makes no assertions about the substance of Dwyer's statements at the press conference, apparently suggesting that a defendant's act of publicizing a lawsuit necessitates a finding that the lawsuit itself addresses a matter of public concern. This position has no basis in law. The plaintiff in Woodard similarly "claim[ed] that the matter became one of public concern because the defendants publicized it." 2020 WL 3546759, at *21. The court rejected this argument, explaining that defendants "did not publicize the plaintiff's petitions or his claims"; rather, "[t]hey publicized the fact that he had been disciplined and the basis for the disciplinary action." Id.

14

In Woodard, publication "did not serve to make the plaintiff's . . . petitions themselves matters of public concern." Id. So too here. Without a more illuminating description of the content of Dwyer's press conference, the Court is unable to find that the press conference created a First Amendment dimension to the dispute.

Nichols has failed to demonstrate that his lawsuit itself—regardless of Defendants' actions following its filing—was constitutionally protected speech sufficient to give rise to a retaliation claim. Nichols was required to allege that the subject matter of his lawsuit "address[ed] a matter of public concern." Guarnieri, 564 U.S. at 386. Nichols has not met this standard, rendering his First Amendment claim futile.

### iii. Prejudice

Defendants argue that prejudice would result from the expansion of Nichols's case to include new claims after his action has already been limited to a narrow set of issues on remand. See Def. Resp. to Mot. to Amend at 9 (citing Dubuc v. Green Oak Twp., 312 F.3d 736, 752 (6th Cir. 2002); Duggins, 195 F.3d at 834). Nichols states without further explanation that Defendants will not be able to show prejudice from the filing of his second amended complaint, see Pl. Br. in Supp. Mot. to Amend at 14, and his reply does not address Defendants' arguments on prejudice at all, see Pl. Reply in Supp. Mot. to Amend.

Without any substantive input from Nichols, the Court accepts Defendants' position that the addition of a new claim would "significantly delay resolution of the dispute" and "require the defendants to expend significant additional resources." Dubuc, 312 F.3d at 752 (affirming denial of motion for second amendment to complaint). Allowing Nichols to add an entirely new cause of action almost four years after he filed his initial complaint—and after an appeal to the Sixth Circuit and multiple rounds of briefing on dispositive motions have steadily restricted the

grounds for his claims—would heap additional costs and burdens on Defendants who have long endured Plaintiff's aggressive motion practice and insistence on several depositions.

Further prolongation of Nichols's case at this stage would be prejudicial. See Schubarth v. Fed. Republic of Germany, No. 14-cv-2140 (CRC), 2020 WL 13065292, at *9 (D.D.C. Mar. 12, 2020) (denying motion to amend complaint as to claims that plaintiff "could have raised it at an earlier stage" because amendment would prejudice defendant by "requir[ing] [it] to defend against a new theory . . . raised over five years after [plaintiff's] complaint was originally filed, and after briefing and appeal of a dispositive motion"); Baker v. Holder, No. 06-cv-91-HRW, 2010 WL 1334924, at *7 (E.D. Ky. Mar. 30, 2010) (denying leave to amend complaint "at this late stage in the proceedings" where the "case [had been] filed nearly four years ago, and ha[d] already been appealed [to] the Sixth Circuit and remanded for further proceedings," explaining: "the sheer passage of time is sufficient ground to deny amendment in light of the evident prejudice to the Defendants"); Russman v. Bd. of Educ. of Enlarged City Sch. Dist. of City of Watervliet, 92 F. Supp. 2d 95, 98–99 (N.D.N.Y. 2000), vacated on other grounds, 260 F.3d 114 (2d Cir. 2001) (finding that amendment to complaint "at this late date . . . would undoubtedly prejudice Defendant," noting that "said motion is beyond the scope of remand ordered by the Second Circuit").

Because of undue delay, lack of due diligence, futility, and prejudice, the Court denies Nichols's motion to amend his complaint. See Garza, 972 F.3d at 879; Duggins, 195 F.3d at 834.

### C. Motion for Sanctions

Nichols asks that the Court award him sanctions based on his assertion that Defendants destroyed certain audio recordings of a conversation between Hermansen and Shift Lieutenant

Stephen Mills in the booking room of the Warren Police Department following Hermansen's arrest. See Pl. Mot. for Sanctions at 3. Nichols asserts that Defendants produced only a video recording of this session, id. at 7, but he learned during a deposition that Captain Christian Bonett claimed to have heard audio footage from this meeting, id. at 4 (citing Bonett Tr. at 42–51 (Dkt. 138-2)). Nichols infers that "[t]he only conclusion that can be drawn from these undisputed facts, is that the Defendant's [sic] have destroyed the video-audio recordings captured by the northeast camera of the booking area." Id. at 8.

A district court "may" impose sanctions if a party destroys evidence in anticipation of litigation. Courser v. Mich. House of Representatives, 831 F. App'x 161, 187 (6th Cir. 2020) (punctuation modified, citations omitted). "[A] party seeking an adverse inference instruction based on the destruction of evidence must establish (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a culpable state of mind; and (3) that the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." Ouza v. City of Dearborn Heights, Michigan, 969 F.3d 265, 285 (6th Cir. 2020) (punctuation modified, citations omitted).

The irrelevance of the evidence suffices to defeat Nichols's request. Nichols states that the audio shows "that Hermansen was injured when an officer, other than Plaintiff, pulled him from the front passenger seat of the car, . . . [which] was when he injured himself and not by way [of] the alleged blow to his neck by Plaintiff." Pl. Mot. for Sanctions at 16. Nichols asks: "What could be more relevant, than this recorded statement?" Id.; see also Pl. Reply in Supp. Mot. for Sanctions at 2.

17

Nichols's suit was remanded to this Court on his claim that Dwyer and Warren violated his procedural due process rights by rendering unavailable to him the CBA grievance procedures guaranteed to lieutenants. Nichols, 856 F. App'x at 596–601. Not before this Court are the merits of whether Nichols should have been fired from his Deputy Commissioner position in the first place—a position from which Nichols could be removed "without cause" and in which he had no property right. Id. at 596. Hermansen's statements in one particular context regarding who was responsible for events that Dwyer subsequently investigated and considered when deciding to terminate Nichols have no relevance as to whether Defendants deprived Nichols of the procedural rights attached to his lieutenancy position.

Additionally, Nichols's speculative accusation that Dwyer and Badalamenti must have intentionally destroyed the evidence at issue fails to establish the requisite culpable state of mind. Nichols must demonstrate more than negligence or gross negligence; he must show that "Defendants had intent to deprive [him] of the information's use." Courser, 831 F. App'x at 188 (punctuation modified, citations omitted). But "[n]othing in the record indicates that . . . Defendants intended to deprive" Nichols of the allegedly destroyed evidence. Id. (punctuation modified, citations omitted) (affirming denial of motion for sanctions).

Nichols has failed to establish two of the three elements required for success on his motion for sanctions. Ouza, 969 F.3d at 285. The Court denies his request.

### III. CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment (Dkt. 125), denies Nichols's motion for summary judgment (Dkt. 126), denies as moot Nichols's motion for the Court to take judicial notice (Dkt. 134); denies Nichols's motion to amend his

complaint (Dkt. 111), grants Nichols's motion to amend that motion to amend his complaint (Dkt. 114), and denies Nichols's motion for sanctions (Dkt. 138).

    SO ORDERED.

Dated: September 29, 2022            s/Mark A. Goldsmith
      Detroit, Michigan               MARK A. GOLDSMITH
                                           United States District Judge