UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MATTHEW NICHOLS,

        Plaintiff,

vs.

WILLIAM DWYER, et al.,

        Defendants.
_____/

Case No. 18-14041

HON. MARK A. GOLDSMITH

**OPINION & ORDER
(1) DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION (Dkt. 149),
(2) DENYING PLAINTIFF'S MOTION FOR RECUSAL (Dkt. 150), AND (3) DENYING
AS MOOT PLAINTIFF'S MOTION TO RECALL MANDATE (Dkt. 154)**

Before the Court are Plaintiff Matthew Nichols's motions for reconsideration (Dkt. 149), for recusal of the undersigned (Dkt. 150), and for a recall of the mandate issued by the United States Court of Appeals for the Sixth Circuit (Dkt. 154). For the reasons that follow, the Court denies Nichols's motions for reconsideration and recusal, and it denies as moot his motion for a recall of the Sixth Circuit's mandate.[1]

**I. BACKGROUND**

This Court has recounted the background of this case at length, see, e.g., 9/29/23 Op. & Order at 2–6 (Dkt. 145), and it need not reiterate that full background here. Nichols brought several claims in this Court against the City of Warren and city officials following his termination from the position of Deputy Police Commissioner with the Warren Police Department. See id. at 4. After this Court dismissed his claims, Nichols appealed. See id. The

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to Nichols's motions, the briefing includes Defendants' response to Nichols's motion for recusal (Dkt. 152) and Nichols's reply (Dkt. 153).

Sixth Circuit affirmed this Court's dismissal of certain claims, but it reversed as to this Court's dismissal of two of Nichols's procedural due process claims, finding that these causes of action survived against Defendants City of Warren and Warren Police Commissioner William Dwyer. See id. at 4–5 (citing Nichols v. Dwyer, 856 F. App'x 589, 601 (6th Cir. 2021)). The Sixth Circuit made clear that Nichols had no procedural due process claim based on his claim to the Deputy Commissioner position; rather, he had plausibly alleged a property interest only in his prior position of lieutenant. Id. (citing Nichols, 856 F. App'x at 596–599).

On remand, this Court conferred with the parties and confirmed their position that Nichols's claims were ready for review on summary judgment. See id. at 5–6 (citing 2/4/22 Order at 2–3 (Dkt. 120)). The parties filed motions for summary judgment, and the Court held a hearing on those motions on July 27, 2022. This Court granted Defendants' motion for summary judgment and denied Nichols's motion for summary judgment. Id. at 8–9. It concluded that Nichols—both in his briefing and in representations made through his attorney, Jamil Akhtar, during the hearing—sought only a return to the Deputy Commissioner position, a form of relief in which he had no property interest for due process purposes. See id. at 6–9. The Court entered judgment against Nichols (Dkt. 146).

Nichols now moves for (i) reconsideration of the grant of summary judgment in Defendants' favor, (ii) recusal of the undersigned from this matter based on alleged personal bias, and (iii) a recall of the Sixth Circuit's mandate.

## II. ANALYSIS

The Court addresses each of Nichols's motions in turn and finds that none has merit.

2

A. **Motion for Reconsideration**

Though Nichols styles his motion as one for reconsideration, he cites the standard for relief from a final judgment, order, or proceeding under Federal Rules of Civil Procedure 60(b)(1) (allowing a court to grant relief in the event of "mistake, inadvertence, surprise, or excusable neglect") and 60(b)(6) (allowing a court to grant relief for "any other reason that justifies relief"). See Mot. for Recons. at 4–5. Rule 60(b) is the proper basis for a request from relief from a final order and judgment like those challenged by Nichols's present motion. See E.D. Mich. L.R. 7.1(h)(1) ("Parties seeking reconsideration of final orders or judgments must file a motion under Federal Rule of Civil Procedure 59(e) or 60(b). The court will not grant reconsideration of such an order or judgment under this rule.").

The Court proceeds by explaining the basis for the decision that Nichols considers a "mistake." Mot. for Recons. at 2. As this Court has explained, in the event of his termination from the Deputy Commissioner position, Nichols was guaranteed certain protections under his employment agreement and the collective bargaining agreement (CBA) executed between the City of Warren and the union for Warren police officers. See 9/29/23 Op. & Order at 2. Nichols's employment agreement stated that he served as Deputy Commissioner "at the pleasure of the Mayor" and that he could be terminated from his Deputy Commissioner position "for any reason or no reason at all." Emp. Ag. at PageID.1469 (Dkt. 50-1). If so terminated, Nichols had a right to return to his former position of lieutenant. Id. The CBA provided a process by which a covered employee in the bargaining unit—e.g., a lieutenant—could file a grievance to challenge a termination from that position. 9/29/23 Op. & Order at 2–3 (citing CBA (Dkt. 55-8)). This four-step process might result in arbitration, but only if the union or the City elected to invoke arbitration—the individual grievant had no right to demand arbitration. Id.

3

When Nichols was terminated from the Deputy Commissioner position, his employment with the City of Warren ended completely—i.e., he was not returned to his lieutenancy position. Id. at 3–4. Further, City of Warren representatives deprived Nichols of access to the CBA's grievance procedures (according to Nichols's well-pleaded allegations), which Nichols would have been entitled to invoke as a lieutenant in the bargaining unit facing termination. See Nichols, 856 F. App'x at 599.

Nichols's procedural due process claim required a protected property interest. See id. at 596. The Sixth Circuit made clear that Nichols had "no property right" in the Deputy Commissioner position, from which he could have been terminated without cause. Id. Rather, Nichols had plausibly alleged only that he had "a constitutionally protectable property interest in his continuing employment as a Lieutenant in the bargaining unit of the Warren Police Department." Id. at 597. Nichols had adequately alleged that he was denied due process as to this interest because he had not been "afforded the opportunity to return to the bargaining unit," where he would have been "eligible to initiate the grievance procedure" to fight to maintain his lieutenancy position. Id. at 599.

However, on remand, Nichols did not assert a due process claim based on a property interest in the lieutenancy position. See 9/29/23 Op. & Order at 6–9. In fact, Nichols specifically represented to the Court through counsel that he was not requesting a return to that position. Id. at 6. Rather, Nichols insisted—both in his briefing and through counsel at the hearing—that the sole relief he sought was a return to the Deputy Commissioner position, arguing that he had not been properly terminated from that position because only the mayor of the City could remove him. Id. But Nichols had no property interest in the Deputy Commissioner position. See id. at 8 (citing Nichols, 856 F. App'x at 596). Because Nichols

4

could not "utilize a theory of procedural due process to win reinstatement to a position in which he ha[d] no property right," the Court granted Defendants' motion for summary judgment and denied Nichols's motion for summary judgment. Id. at 8–9 (citing Kizer v.Shelby Cnty. Gov't, 649 F.3d 462, 468 (6th Cir. 2011) (affirming grant of summary judgment to defendant employers on procedural due process claim, explaining that terminated plaintiffs "failed to show that they have a constitutionally protected property interest in their employment . . . [a]nd, without a legitimate property interest, the Due Process Clause offers no procedural protections to these former employees")).

Nichols now asserts that this decision was a "mistake," though in fact, he merely disagrees with the outcome. Nichols argues that "the Court made a mistake, in not ruling that the contractual right to return to the bargaining unit, could only be triggered by the Mayor," and that Nichols's "removal from the Deputy Commissioner's position by the Mayor is a question of fact for a jury to decide, and the Court made a mistake in not ruling that this interpretation of the employment agreement needed to go to the jury." Mot for Recons. at 2 (emphasis in original). Nichols further submits that "the decision of the Mayor is a condition precedent to the Plaintiff being allowed to invoke his right for arbitration under the" CBA, which he also asserts is a question of material fact to be decided by a jury. Id. at 5–6.

This Court did not make a "mistake" by "not ruling" the way Nichols hoped it would. Nichols did not have a breach-of-contract claim before this Court on remand, nor a procedural due process claim based on his removal from the Deputy Commissioner position. See 9/29/22 Op. & Order at 8 (citing Nichols, 856 F. App'x 589 at 596). His only surviving claim was a procedural due process claim based on his alleged property interest in a return to the lieutenancy position, and Nichols expressly chose not to assert any claim based on this interest. See id. at 6–

5

9. Lacking a protected property interest in the Deputy Commissioner's position, Nichols cannot manufacture a meritorious due process claim by recycling his old argument that only the mayor could terminate him from the Deputy Commissioner's position. Nichols's assertion that there are questions of material fact relating to who could terminate him as Deputy Commissioner does not relieve him of the obligation to demonstrate that his requested relief is grounded in a protected property interest. See 9/29/22 Op. & Order at 8–9 (citing Kizer, 649 F.3d at 468). Nichols has asserted no such property interest, and so he has no viable procedural due process claim. The grant of summary judgment to Defendants was proper. See id.

Nichols has failed to show that the Court made a "mistake" in granting Defendants summary judgment, or that the relief is otherwise "justif[ied]." Fed. R. Civ. P. 60(b)(1), (6). The Court denies his Rule 60(b) motion for "reconsideration."

### B. Motion for Recusal

Nichols next moves for the recusal of the undersigned pursuant to 28 U.S.C. §§ 144, 455(a), and 455(b)(1). See Mot. for Recusal at 1.

Section 144 states:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.

§ 144. "The § 144 affidavit must state factual averments with particularity as to time, person, place, and circumstances." Scott v. Metro. Health Corp., 234 F. App'x 341, 352 (6th Cir. 2007). When reviewing a § 144 affidavit, "the court may only credit facts that are sufficiently definite and particular to convince a reasonable person that bias exists; simple conclusions, opinions, or rumors are insufficient." Id. (punctuation modified).

Section 455(a) states: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." § 455(a). Under § 455(b)(1), a judge "shall . . . disqualify himself . . . [w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." § 455(b)(1). Under the statute, "the judge is free to make credibility determinations," and "the ultimate question is whether a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." Scott, 234 F. App'x at 354 (punctuation modified).

Pursuant to both § 144 and § 455, "a judge is presumed to be impartial, and the party seeking disqualification bears the substantial burden of proving otherwise." Scott, 234 F. App'x at 352 (punctuation modified) (affirming denial of recusal motion brought under 28 U.S.C. §§ 144 and 455). "The burden is not on the judge to prove that he [or she] is impartial." Id.

Nichols asserts several distinct grounds to support his accusation of bias. The Court proceeds by (i) considering whether Nichols has complied with the procedural requirements of § 144; (ii) addressing Nichols's asserted grounds for bias, which were known to Nichols before the adverse summary judgment ruling; and (iii) assessing the merits of Nichols's remaining arguments.

**1. Affidavit and Good Faith Certification Under § 144**

"The requirements of § 144 are strictly construed to prevent abuse . . . ." Scott, 234 F. App'x at 353. Section 144 requires that a "party" file "a timely and sufficient affidavit" that "state[s] the facts and the reasons for the belief that bias or prejudice exists," which must be "accompanied by a certificate of counsel of record stating that it is made in good faith." § 144. The failure to file a "separate" certificate attesting that the recitations in the affidavit were made

7

in good faith is grounds for denial. Scott, 234 F. App'x at 353 (punctuation modified) (affirming denial of § 144 motion and finding that movant had "not properly raised the § 144 issue" where movant "failed to file the certificate of counsel"); see also United States v. White, 582 F. Supp. 3d 525, 533 (E.D. Mich. 2022) (denying motion to recuse and finding that motion did not meet § 144 standard where movant did not include certificate of good faith). The statute requires that the party execute the affidavit and that counsel execute the certificate of good faith. See Roberts v. Bailar, 625 F.2d 125, 128 (6th Cir. 1980) (finding § 144 motion "invalid" where "Plaintiff's counsel, not plaintiff, signed and filed the affidavit").

Before the Court are Akhtar's affidavit (Dkt. 151) and Nichols's declaration (Dkt. 150-1). These documents fail to comply with § 144.

### a. Akhtar's Affidavit as Both Affidavit and Good-Faith Certificate

There is no filing on the record identified as a certificate of counsel. Akhtar filed an affidavit. See Akhtar Aff. His affidavit is three paragraphs long. It states that Akhtar is Nichols's counsel. Id. ¶ 1. It states that Akhtar "relied upon the statements contained in Plaintiff Matthew Nichols'[s] declaration" when preparing the present motion for recusal. Id. ¶ 3 (citing Nichols Decl. (declaring that statements in motion for recusal are "factually correct . . . based on good faith information and belief" without specifically reciting any facts)). And the affidavit states: "The statements contained within Plaintiff Matthew Nichols['s] motion for the recusal of Judge Goldsmith, and which are attributed to me, are factually correct or are otherwise based upon good-faith information and belief." Id. ¶ 2.

If the Court accepts the plain meaning of the document's title and interprets Akhtar's affidavit as a § 144 affidavit, then it fails to comply with § 144 on several fronts. First, the affidavit must be executed by the party, not by counsel. Roberts, 625 F.2d at 128. Akhtar's

8

execution of the affidavit means that there is no party affidavit to support Nichols's motion for recusal, in violation of § 144. See id.

Second, if Akhtar's affidavit is interpreted as a § 144 affidavit, then Akhtar has not filed a "separate" good-faith certificate. Scott, 234 F. App'x at 353 (punctuation modified). This failing is a sufficient basis for a denial of Nichols's motion on § 144 grounds. See id.; White, 582 F. Supp. 3d at 533.

Third, even if the Court construed Akhtar's affidavit in the most liberal fashion—to allow for inclusion of a good-faith certification in the same filing as the affidavit—Akhtar has not certified that "the affidavit was made in good faith." Scott, 234 F. App'x at 353 (punctuation modified). Rather, Akhtar submits only that certain statements in the motion for recusal—i.e., those "which are attributed to me"—either (i) are "factually correct," or (ii) "are otherwise based upon good-faith information and belief." Akhtar Aff. ¶ 2. Thus, Akhtar does not purport to certify that the entirety of the affidavit was "made in good faith," § 144; he submits only that parts of the motion were made in good faith or are factually accurate.[2] Because "[t]he requirements of § 144 are strictly construed to prevent abuse," these representations do not comply with the statute. Scott, 234 F. App'x at 353.

Lastly, because Akhtar's three-paragraph affidavit merely refers to a separately filed motion and declaration, it does not specifically recite any factual allegations, and thus it utterly fails to state facts with "particularity as to time, person, place, and circumstances." Scott, 234 F. App'x at 352. This deficiency, too, merits a denial under § 144. See id.

---

[2] Further, the only assertions in Nichols's motion that could conceivably be considered "statements . . . attributed to" Akhtar are (i) Akhtar's emotional reaction of being "upset and dismayed" when learning from his client that the undersigned allegedly mispronounced his name, (ii) Akhtar's insistence that he has never been reprimanded by a judge before, and (iii) Akhtar's purported "belief" that the undersigned "would have had personal contact with Defendant Dwyer." See Mot. for Recusal at 3, 7–8. As further explained below, these grounds do not justify recusal even if considered under § 144.

9

### b. Nichols's Declaration as Affidavit and Akhtar's Affidavit as Good-Faith Certificate

Nichols fares no better if the Court treats his declaration as the § 144 affidavit and Akhtar's affidavit as the certificate of counsel. Nichols's declaration is not accompanied by an adequate certificate of good faith. Akhtar's affidavit does not purport to certify that anything in Nichols's declaration was made in good faith; it submits only that certain statements in Nichols's motion were made in good faith or are factually correct. See Akhtar Aff. ¶ 2. This representation does not meet the good-faith certification requirement of § 144.

Additionally, Nichols's declaration—like Akhtar's affidavit—fails to state facts with "particularity as to time, person, place, and circumstances." Scott, 234 F. App'x at 352. Instead, Nichols's one-page declaration states generally that certain paragraphs in the motion (i.e., all factual statements except those relating to the undersigned's alleged personal relationship with Defendant Dwyer) either are "factual" or are "correct" "on good faith information and belief." Nichols Decl.

Thus, Nichols has not furnished the necessary documents for requesting the undersigned's recusal under § 144.

Nonetheless, the Court proceeds by considering the merits of each of Nichols's grounds for bias under both § 144 and § 455. The Court first considers Nichols's asserted grounds that predate this Court's summary judgment decision: (i) this Court's rulings on Nichols's past motions, (ii) the undersigned's alleged personal connection to Defendant Dwyer, and (iii) this Court's quotation from a commonly used Sixth Circuit opinion. The Court then considers Nichols's grounds relating to (i) the undersigned's alleged mispronunciation of Akhtar's name, and (ii) this Court's reference to Akhtar in certain opinions and orders.

10

### 2. Grounds for Alleged Bias Predating Adverse Summary Judgment Decision

Neither § 144 nor § 455 allows a party to litigate his or her case before a judge, brief a dispositive motion, and then cry personal bias only after having received an unfavorable ruling. An affidavit under § 144 must be "timely," which means it must be "submitted at the earliest moment after the movant acquires knowledge of the facts demonstrating the basis for such disqualification." Scott, 234 F. App'x at 352 (punctuation modified).

Similarly, "[a] party may not withhold a § 455 recusal application as a fall-back position in the event of adverse rulings on pending matters." LeVay v. Morken, 590 F. Supp. 3d 1037, 1043 (E.D. Mich. 2022) (punctuation modified). And "the most egregious delay—the closest thing to per se untimeliness—occurs when a party already knows the facts purportedly showing an appearance of impropriety but waits until after an adverse decision has been made by the judge before raising the issue." Id. at 1044 (punctuation modified) (denying motion to recuse as untimely).

Nichols asserts three bases for alleged bias of which he was aware well before this Court's summary judgment ruling, making them untimely under both § 144 and § 455.

#### a. Rulings on Past Motions

Nichols notes that this Court has ruled against Nichols on multiple motions, including discovery motions and motions relating to sanctions.[3] These decisions date as far back as February 2020, and none of them is more recent than February 2022. Yet Nichols did not assert

---

[3] See Mot. at 4–7 (citing 2/19/2020 Op. & Order (Dkt. 76) (granting in part and denying in part Defendants' motion to dismiss, denying Nichols's motion for partial summary judgment, and denying as moot Nichols's motions for depositions); 9/11/2020 Op. & Order (Dkt. 82) (granting in part and denying in part Defendants' motion for sanctions); 7/30/21 Op. & Order (Dkt. 97) (determining award of sanctions); 2/4/22 Order (Dkt. 120) (denying without prejudice Nichols's motion to compel depositions); 2/14/22 Order (Dkt. 122) (denying Nichols's request to deposit funds with clerk of court); 2/17/22 Order (Dkt. 123) (denying Nichols's emergency motion to depose Karl Hermansen)).

11

bias on the basis of these rulings until his present October 2022 motion—<u>after</u> this Court had ruled against him on summary judgment in September 2022. Nichols cannot present these decisions as grounds for bias only after the Court's issuance of an adverse decision against him. <u>Scott</u>, 234 F. App'x at 352; <u>LeVay</u>, 590 F. Supp. 3d at 1043–1044.

Regardless, this Court's rulings on motions in the present action are not a proper basis for recusal. "Disqualification under § 144 and § 455 'must be predicated upon extrajudicial conduct rather than on judicial conduct,' and upon 'a personal bias as distinguished from a judicial one, arising out of the judge's background and association and not from the judge's view of the law.'" <u>Elledge v. Meredith</u>, No. 19-11233, 2022 WL 1446572, at *1 (E.D. Mich. May 6, 2022) (denying motion to recuse) (quoting <u>Green v. Nevers</u>, 111 F.3d 1295, 1303–1304 (6th Cir. 1997) (punctuation modified)). This Court's rulings on motions in this case—clearly "judicial conduct"—provide no grounds for recusal. <u>See</u> <u>id.</u>; <u>Carlton v. United States</u>, No. 05-50023, 2007 WL 2332496, at *1 (E.D. Mich. Aug. 15, 2007) (denying motion to recuse based "merely [on] points of disagreement with this Court's rulings").

  b. **Alleged Personal Contact with Defendant**

Next, asserting that the undersigned was "active in the Oakland County law enforcement community" as an attorney, circuit judge, and member of the Oakland County Criminal Justice Coordinating Council, Nichols submits: "it is my (Nichols['s]) and Mr. Akhtar's belief, that Judge Goldsmith would have had personal contact with Defendant Dwyer, who for over two decades, was the Chief of Police for the city of Farmington Hill[s], Oakland County." Mot. for Recusal at 7–8; <u>see also</u> Reply in Supp. Mot. for Recusal at 6–7.[4] Nichols also observes that Dwyer stated during a news conference that he was "'confident that Judge Goldsmith [would]

---

[4] Throughout this opinion, parentheses used in quotations represent Nichols's original punctuation; brackets have been added by the Court.

12

dismiss this case quickly.'" Mot. for Recusal at 8 (quoting 1/9/19 Press Conf. Tr. at 4 (Dkt. 150-8)).

The undersigned has not been a Michigan circuit judge since 2010, and Nichols relies on a statement made by Dwyer in 2019. If Nichols had a legitimate concern that the undersigned held a bias in the present case, Nichols was required to raise that concern when he became aware of the information underlying it—not after issuance of an adverse ruling on a dispositive motion. See Scott, 234 F. App'x at 352; LeVay, 590 F. Supp. 3d at 1043–1044.

Further, the asserted ground is insufficient for recusal even if presented on a timely basis. Nichols cannot prevail under either the § 144 or § 455 standard by merely asserting his suspicion that the undersigned "would have" had personal contact with Dwyer. Nichols's guess that the undersigned might have crossed paths with one of the named defendants more than a decade ago is purely speculative and cannot reasonably be viewed as establishing bias or even an appearance of bias. This dooms a motion for recusal under both §§ 144 and 455. Scott, 234 F. App'x at 352, 354. Additionally, the undersigned has no memory of any personal contact with Dwyer, and certainly has no bias in favor of Dwyer or against Nichols or Akhtar. This ground for recusal is meritless.

### c. Sixth Circuit Quote

Nichols considers "the most telling example of the Court's animus towards Mr. Akhtar" to be the Court's following statement in its order denying Nichols's motion to deposit funds: "'It is [the parties'] burden to tell us and make the argument because judges are not like pigs, hunting for truffles that might be buried in the record.'" Mot. for Recusal at 7 (quoting 2/14/22 Order (punctuation modified)).

13

Aside from Nichols's untimely reliance on a February 2022 order, he also fails to explain how the Court's language indicates bias. It does not. The Court was quoting a Sixth Circuit opinion. See 2/14/22 Order (quoting ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 585 (6th Cir. 2018)). This language is commonly used in this circuit to emphasize that an attorney cannot prevail on an argument without citing to supporting authorities and underlying facts, as it is not the Court's job to flesh out skeletal arguments on behalf of the parties. The Sixth Circuit itself has used this language at least ten times. See, e.g., Doster v. Kendall, 54 F.4th 398, 422 (6th Cir. 2022). The Court was very clearly not calling Akhtar a pig or referring to him in any demeaning fashion. There is no reasonable ground for bias here. See Scott, 234 F. App'x at 352, 354.

### 3. Grounds for Alleged Bias Relating to Adverse Summary Judgment Decision

Nichols next raises two grounds relating to the Court's ruling against him on the parties' summary judgment motions. The Court considers each argument and finds that neither of Nichols's grounds presents a basis on which a "reasonable" person would question the undersigned's impartiality, defeating his motion under both § 144 and § 455. See id.

#### a. Alleged Mispronunciation of Name

Nichols argues that the Court mispronounced Akhtar's name at the hearing and that Akhtar took offense to the same. Id. at 2–3. Nichols states in the body of his motion:

> I (Nichols) was present at the oral arguments, wherein Judge Goldsmith constantly referred to Plaintiff's counsel, Jamil Akhtar, as 'Mr. Akbar.' I (Nichols) advised my attorney, that it was my (Nichols['s]) opinion that Judge Goldsmith was referring to my (Nichols['s]) attorney as Mr. 'Akbar,' for what appears to be some personal reason . . . .

Id. Nichols submits that he "told" Akhtar about this alleged mispronunciation at a "dinner meeting" following the hearing, at which time "Akhtar became upset and dismayed." Id. at 3.

Nichols suggests that this language is "demeaning" because "'Akbar' is, in the Muslim language[,] interpreted as 'Great,'" and "Akhtar is a Christian." Id.; see also Reply in Supp. Mot. for Recusal at 5 (asserting that the undersigned referred to Akhtar "in a derogative manner").

This assertion is not credible on its face. Counsel for Defendants submits that she did not hear any mispronunciation of Akhtar's name during the hearing. Resp. to Mot. for Recusal at 5. Defendants also correctly observe that the transcript of the hearing does not reflect any such mispronunciation. Id. (citing Hr'g Tr. at 9, 17, 21 (Dkt. 140)). The undersigned has no recollection of calling Akhtar "Akbar." Nor does Akhtar himself claim to have noticed that the undersigned was mispronouncing his name during the hearing; instead, Nichols submits that he personally told Akhtar after the hearing of the alleged mispronunciation, and it was only at this time that Akhtar—a participant in oral argument during the hearing—became "upset and dismayed." Mot. for Recusal at 2–3. The most reasonable interpretation of these events is that the Court never mispronounced Akhtar's name.

Even if the undersigned had misspoken in reference to Akhtar, that allegation is insufficient for recusal. Defendants consider it "just plain silly" that bias could be demonstrated by the Court purportedly referring to an attorney by a word that translates as "great." Resp. to Mot. for Recusal at 5–6. The Court agrees. Even if the mispronunciation had occurred, "comments that judges make during judicial proceedings, including remarks that are hostile toward counsel, the parties, or their case, ordinarily do not support a bias or partiality challenge." White, 582 F. Supp. 3d at 534 (denying motion to recuse under §§ 144 and 455 standards) (punctuation modified); see also In re Steward, 828 F.3d 672, 682 (8th Cir. 2016) (affirming denial of § 455 recusal motions, explaining: "a party is not entitled to recusal merely because a

15

judge is exceedingly ill disposed toward them, where the judge's knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings") (punctuation modified). The Court's alleged mispronunciation of Nichols's attorney's name does not provide a reasonable basis for doubting that the undersigned was impartial.

### b. References to Akhtar in Orders and Opinions

Nichols also observes that this Court has referred to Akhtar by name in certain orders and opinions, including the Court's decision on summary judgment. He suggests that the undersigned was "deliberately and by design, demeaning my attorney Jamil Akhtar, by implying that the admissions by my attorney, was [sic] the reason for the Court granting the Defendants['] Motion for Summary Judgment." Id. at 2.

This Court has identified Akhtar in its rulings only when Akhtar's own representations have been relevant. The Court relied on both Akhtar's statements during the hearing and Nichols's arguments in his briefing when assessing the alleged property interest underlying Nichols's procedural due process claim. See 9/29/23 Op. & Order at 6–9 ("The Court may properly rely on Nichols's counsel's representations in open court when ruling on the parties' motions for summary judgment."). The Court also referred to Akhtar where Defendants' motion for sanctions "exclusively concern[ed] his conduct." 9/11/20 Op. & Order at 2 n.2. Nichols's present argument improperly asserts bias based on judicial conduct, see Elledge, 2022 WL 1446572, at *1, and he has identified no reasonable basis for questioning the undersigned's impartiality, see Scott, 234 F. App'x at 352, 354.

Additionally, there is no reasonable basis for bias in Nichols's suggestion that Akhtar has not been reprimanded by any other court. See Mot. for Recusal at 7. This allegation does not necessitate a finding that the next court to rule against Akhtar bears animus against him.

16

Nichols has failed to overcome the presumption that the undersigned is impartial. See Scott, 234 F. App'x at 352. The Court denies his motion for recusal.

### C. Motion to Recall Mandate

Nichols also moves for the Sixth Circuit to recall its mandate issued after the Sixth Circuit affirmed in part and reversed in part this Court's dismissal of Nichols's claims. See Mot. for Recall (citing 6/10/21 Mandate (Dkt. 92)). Nichols appears to have intended to file this motion with the Sixth Circuit rather than with this Court, as the caption of his motion references the Sixth Circuit and his request for relief is addressed to that court. See id. Regardless, the Sixth Circuit has already denied Nichols's motion to recall its mandate (Dkt. 156). Accordingly, the Court denies Nichols's motion to recall the Sixth Circuit's mandate as moot.

### III. CONCLUSION

For the reasons explained above, the Court denies Nichols's motion for reconsideration (Dkt. 149) and motion for recusal of the undersigned (Dkt. 150). It denies as moot Nichols's motion for a recall of the Sixth Circuit's mandate (Dkt. 154).

SO ORDERED.

Dated: May 11, 2023  s/Mark A. Goldsmith
    Detroit, Michigan  MARK A. GOLDSMITH
                                      United States District Judge